IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 1:26-cv-25026

NADEZHDA ROZHKOVA,

        Plaintiff,

v.

HYUNDAI CAPITAL AMERICA, INC.,
D/B/A KIA FINANCE AMERICA,

        Defendant.

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Nadezhda Rozhkova ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis against Defendant Hyundai Capital America, Inc., doing business as Kia Finance America ("Kia Finance" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1.     This is an action for damages arising from Kia Finance's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and specifically 15 U.S.C. § 1681s-2(b).

2.     Kia Finance furnished to nationwide consumer reporting agencies that Plaintiff's automobile account was charged off and carried a past-due balance, thereby representing to potential creditors that Plaintiff had failed to pay the account as agreed.

3.     That reporting contradicted Kia Finance's own account records and written communications. After Plaintiff's insurer paid Kia Finance $24,055 following a total loss, Kia Finance issued Plaintiff a formal letter stating that the retail installment contract was paid in full. Kia Finance also repeatedly advised Plaintiff in writing that, if any amount remained due, the next payment was not due until March 1, 2028.

4.      Kia Finance nevertheless treated the account as severely delinquent and charged off. Even after Plaintiff agreed to a payment plan and made the scheduled payments, Kia Finance continued furnishing the derogatory status.

5.      Plaintiff disputed the reporting through Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"). The disputes specifically identified the contradictions and included the paid-in-full letter and Kia Finance's emails showing the March 1, 2028 due date.

6.      The consumer reporting agencies notified Kia Finance of the disputes pursuant to 15 U.S.C. § 1681i(a)(2), including through Automated Credit Dispute Verifications ("ACDVs"). Those notices triggered Kia Finance's duties under 15 U.S.C. § 1681s-2(b).

7.      A reasonable investigation required Kia Finance to review and reconcile its own payment history, insurance-payoff records, paid-in-full letter, future-due-date emails, charge-off records, and payment-plan records. Those objective records were readily available to Kia Finance.

8.      Instead, in response to the ACDVs it received from at least one of the consumer reporting agencies, Kia Finance verified, maintained, and continued furnishing the charge-off, past-due status, and balance. The derogatory tradeline remained on Plaintiff's consumer reports and was subsequently published to potential creditors.

9.      As a direct result, Plaintiff was denied credit, denied a credit-limit increase, and extended credit only on materially unfavorable terms. Plaintiff also suffered damage to her credit standing, loss of time, out-of-pocket expense, frustration, humiliation, anxiety, and emotional distress.

**PARTIES**

10.      Plaintiff is a natural person who resides in Miami, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

11.     Defendant Hyundai Capital America, Inc. d/b/a Kia Finance is a California corporation authorized to transact business in Florida and does business under the service brand Kia Finance America. Defendant's principal place of business is located at 3161 Michelson Drive, Suite 1900, Irvine, California 92612. Defendant may be served through its registered agent, NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida 33324.

12.     At all relevant times, Defendant regularly and in the ordinary course of business furnished information concerning consumers, including Plaintiff, to one or more consumer reporting agencies and was a "furnisher of information" subject to 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the FCRA.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District, Plaintiff resides in this District, Plaintiff received and relied upon Defendant's communications in this District, and Plaintiff suffered harm in this District.

15.     Defendant is subject to personal jurisdiction in Florida because it is authorized to transact and does transact business in Florida, serviced Plaintiff's Florida automobile account, furnished information concerning Plaintiff to consumer reporting agencies while Plaintiff resided in Florida, and caused injury to Plaintiff in Florida.

## FACTUAL ALLEGATIONS
### Plaintiff Finances a Vehicle Through Kia Finance

16.     On or about June 13, 2023, Plaintiff financed the purchase of a 2023 Kia Sportage under a Retail Installment Sales Contract serviced by Kia Finance.

17.     At all times before April 2025, Plaintiff remained current on her payment obligations. Kia Finance consistently sent Plaintiff monthly reminders around the middle of each month confirming the next payment due date.

18. On or about April 13, 2025, Kia Finance emailed Plaintiff that her next payment was due on May 1, 2025. As of that date, Plaintiff's account was in good standing.

19. In or around April 2025, Plaintiff was involved in a motor-vehicle accident while driving the 2023 Kia Sportage. On the morning of the accident, Plaintiff made her scheduled monthly payment.

20. On or about May 7, 2025, Plaintiff's insurer, GEICO, declared the vehicle a total loss and agreed to pay $24,055 directly to Kia Finance.

21. On or about May 17, 2025, Kia Finance confirmed in writing that the $24,055 insurance payment had been successfully processed on May 15, 2025.

22. During May 2025, Kia Finance did not advise Plaintiff that any additional balance remained due.

23. On or about June 13, 2025, Kia Finance sent Plaintiff a formal letter concerning the Retail Installment Sales Contract dated June 13, 2023 (the "Paid-in-Full Letter").

24. The Paid-in-Full Letter stated: "Our records reflect that your retail installment contract, referenced above, is paid in full." It further represented that Kia Finance had electronically filed the original lien and that the title would be forwarded by the Department of Motor Vehicles.

25. On the same day, notwithstanding the Paid-in-Full Letter, Kia Finance emailed Plaintiff a statement listing an amount due of $653.49 and a payment due date of **March 1, 2028**.

26. Plaintiff was confused by Kia Finances inconsistent statements by Kia.

27. On or about July 12, 2025, and again on or about August 14, 2025, Kia Finance sent further emails stating that money was owed but that payment was due on March 1, 2028 (collectively, the "Kia Emails").

28. At a minimum, the Kia Emails represented that Plaintiff was not required to make any further payment before March 1, 2028. Plaintiff reasonably relied on those representations.

29.     In or around September 2025, Kia Finance telephoned Plaintiff and asserted for the first time that she was behind on payments, that the account had been charged off, and that approximately $6,000 remained outstanding.

30.     Plaintiff was shocked, confused, and frightened by Kia Finance's assertion, but attempted to resolve the matter and protect her credit. Plaintiff agreed to a voluntary payment plan concerning any alleged remaining balance.

31.     Under that plan, electronic payments of $500 each were processed through ACI Payments, Inc. on or about October 2, 2025, and October 31, 2025. Plaintiff thereafter made the scheduled payments required by the plan.

**Kia Finance Furnishes the Inaccurate Tradeline**

32.     In or around October 2025, Plaintiff obtained and reviewed her consumer reports and discovered that Kia Finance was furnishing a severely derogatory charge-off designation concerning her automobile account.

33.     The Kia Finance tradeline was reported substantially as follows: KIA FINANCE AMERICA; date opened June 13, 2023; Partial Account No. 2023060489XXXX; balance of $5,873; and status "Charge-off" (the "Inaccurate Tradeline").

34.     The charge-off designation, past-due status, and associated balance were inaccurate or materially misleading because Kia Finance had formally stated that the contract was paid in full and had separately and repeatedly stated that no payment was due before March 1, 2028.

35.     The reporting was also materially misleading because, after Kia Finance claimed that a balance remained, Plaintiff entered a payment plan and made the agreed payments, yet Kia Finance continued to report the account as charged off and past due.

36.     A charge-off designation communicates to users of a consumer report that the consumer became severely delinquent and failed for a prolonged period to pay an obligation when

due. That representation was inaccurate and materially misleading here because Kia Finance's own written communications stated that payment was not due until March 1, 2028.

37. The Inaccurate Tradeline therefore misrepresented Plaintiff's payment history, creditworthiness, and character as a responsible consumer.

**Plaintiff's Experian Dispute and Kia Finance's Investigation**

38. On or about November 26, 2025, Plaintiff submitted a written dispute to Experian challenging the accuracy and completeness of the Inaccurate Tradeline.

39. Plaintiff explained that the charge-off and related adverse reporting were inaccurate or materially misleading. She provided Experian with the Paid-in-Full Letter, the Kia Emails, proof of address, and a copy of her driver's license.

40. Plaintiff asked Experian to investigate and delete or correct the charge-off, past-due amount, and balance.

41. In late November or early December 2025, Experian notified Kia Finance of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(2), including by sending Kia Finance an ACDV.

42. Upon information and belief, Experian's notice conveyed the substance of Plaintiff's dispute and the relevant supporting information Plaintiff had provided.

43. Kia Finance thus knew that Plaintiff specifically relied on Kia Finance's own Paid-in-Full Letter and Kia Emails to challenge the charge-off and past-due reporting.

44. On or about December 12, 2025, Experian issued its dispute results and stated that the Kia Finance account had been "updated." The tradeline nevertheless continued to report a charge-off, $5,873 written off, and $4,373 past due as of October 2025.

45. The continued reporting and purported update support the reasonable inference that Kia Finance improperly verified or otherwise caused Experian to maintain the charge-off, past-due status, and balance after receiving notice of Plaintiff's dispute.

**Plaintiff's Equifax Disputes and Kia Finance's Investigation**

46.     On or about December 2, 2025, Plaintiff submitted an online dispute to Equifax challenging the Inaccurate Tradeline and requesting correction or deletion.

47.     Plaintiff explained that the charge-off and related adverse reporting were inaccurate or materially misleading and identified information sufficient to locate the account and investigate the dispute.

48.     Equifax notified Kia Finance of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(2), including by sending Kia Finance an ACDV.

49.     On or about January 1, 2026, Plaintiff supplemented her Equifax dispute in writing and again provided the Paid-in-Full Letter, the Kia Emails, proof of address, and a copy of her driver's license. Equifax received the supplemental dispute on or about January 15, 2026.

50.     Upon information and belief, Equifax's notice or notices conveyed the substance of Plaintiff's dispute and the relevant supporting information Plaintiff had provided.

51.     On or about February 17, 2026, Plaintiff obtained an updated Equifax consumer report. The Inaccurate Tradeline still reported a charge-off, with a reduced balance of $3,873.

52.     The continued charge-off reporting after Equifax notified Kia Finance of the dispute supports the reasonable inference that Kia Finance failed to correct the reporting after receiving notice and either verified the derogatory status or failed to report accurate investigation results to Equifax.

**Plaintiff's Trans Union Dispute and Kia Finance's Investigation**

53.     On or about December 18, 2025, Plaintiff submitted a written dispute to Trans Union challenging the Inaccurate Tradeline.

54.     Plaintiff explained that the charge-off and related adverse reporting were inaccurate or materially misleading and provided the Paid-in-Full Letter, the Kia Emails, proof of address, and a copy of her driver's license.

55.     On or about December 25, 2025, Trans Union acknowledged receipt of Plaintiff's dispute.

56.     On or about December 30, 2025, Trans Union advised Plaintiff that it was awaiting the creditor's response. This communication confirms that Trans Union had opened a reinvestigation and notified Kia Finance of the dispute pursuant to 15 U.S.C. § 1681i(a)(2), including through an ACDV.

57.     Upon information and belief, Trans Union's notice conveyed the substance of Plaintiff's dispute and the relevant supporting information Plaintiff had provided.

58.     On or about January 9, 2026, Trans Union issued dispute results stating that the Kia Finance information had been "updated."

59.     On or about January 23, 2026, Plaintiff obtained an updated Trans Union consumer report confirming that the Kia Finance account still carried a charge-off remark and a reported balance of $3,873.

60.     The continued reporting and purported update support the reasonable inference that Kia Finance improperly verified or otherwise caused Trans Union to maintain the charge-off and balance after receiving notice of Plaintiff's dispute.

### Kia Finance's Unreasonable Investigations

61.     Each consumer reporting agency's notice triggered Kia Finance's independent duty to conduct a reasonable investigation, review all relevant information provided by the agency, and accurately report the results.

62.     A reasonable investigation required Kia Finance to consult and reconcile the records uniquely within its possession, including the Retail Installment Sales Contract, Plaintiff's complete payment history, the $24,055 insurance payment, the Paid-in-Full Letter, the lien-release record, the Kia Emails listing March 1, 2028 as the due date, the charge-off history, and the payment-plan records.

63.    Those records presented obvious and material contradictions that could not reasonably be resolved by merely confirming that an account number and balance appeared in Kia Finance's furnishing system.

64.    The disputed issue was factual and objectively verifiable from Kia Finance's own records: whether Kia Finance had declared the contract paid in full; whether Kia Finance had told Plaintiff that no payment was due before March 1, 2028; whether any payment was actually past due; whether Plaintiff had complied with the later payment plan; and whether a charge-off accurately described the account.

65.    Had Kia Finance reasonably reviewed its own records and the dispute information, it would have discovered that the charge-off and past-due reporting was inaccurate and materially misleading and could not be verified as reported.

66.    Upon information and belief, Kia Finance instead relied on the same automated account fields that generated or stored the disputed reporting, without meaningfully reviewing the underlying documents and communications that contradicted those fields.

67.    Kia Finance failed to conduct a reasonable investigation of each dispute transmitted by Experian, Equifax, and Trans Union.

68.    Kia Finance failed to review all relevant information provided by the consumer reporting agencies.

69.    Kia Finance failed to report complete and accurate investigation results to the consumer reporting agencies.

70.    Kia Finance failed to correct the information with every consumer reporting agency to which it had furnished the Inaccurate Tradeline.

71.    Kia Finance failed to modify, delete, or permanently block the charge-off, past-due status, and balance after the information was shown to be inaccurate, incomplete, materially misleading, or unverifiable.

72. Kia Finance's repeated verification or maintenance of the Inaccurate Tradeline caused Experian, Equifax, and Trans Union to continue publishing the derogatory information after Kia Finance received statutory notice of Plaintiff's disputes.

**Post-Notice Credit Harm**

73. After Kia Finance received Experian's notice of dispute, Plaintiff applied for credit with Capital One Bank in late December 2025 or early January 2026.

74. On or about January 1, 2026, Capital One approved Plaintiff only for a $300 credit limit at an annual percentage rate of 28.99%. Capital One stated that its decision was based on information from Experian.

75. Kia Finance's continued furnishing or verification of the Inaccurate Tradeline caused or contributed to Plaintiff receiving materially less favorable terms from Capital One.

76. After Kia Finance received Experian's notice of dispute, Plaintiff also applied for credit with Discover in late December 2025 or early January 2026.

77. On or about January 1, 2026, Discover approved Plaintiff only for a $200 credit limit at an annual percentage rate of 26.49%. Discover stated that its decision was based on information from Experian.

78. Kia Finance's continued furnishing or verification of the Inaccurate Tradeline caused or contributed to Plaintiff receiving materially less favorable terms from Discover.

79. In or around January 2026, after Kia Finance received notices of dispute from Experian and Trans Union, Plaintiff applied for a credit-limit increase with American Express.

80. On or about January 22, 2026, American Express denied the requested increase and stated that its decision was based on consumer reports from Experian and Trans Union.

81. Kia Finance's continued furnishing or verification of the Inaccurate Tradeline caused or contributed to the American Express denial.

82.     In or around February 2026, after Kia Finance received Equifax's notice of dispute, Plaintiff applied for credit with Pentagon Federal Credit Union ("PenFed").

83.     On or about February 18, 2026, PenFed denied Plaintiff's application and stated that its decision was based on a consumer report from Equifax.

84.     Kia Finance's continued furnishing or verification of the Inaccurate Tradeline caused or contributed to the PenFed denial.

85.     In or around February 2026, Plaintiff applied for a loan with Digital Federal Credit Union ("DCU").

86.     On or about February 18, 2026, DCU denied Plaintiff's application because her consumer report reflected unpaid charge-off accounts.

87.     Upon information and belief, the Inaccurate Tradeline was an unpaid charge-off account considered by DCU, and Kia Finance's continued furnishing or verification of that tradeline caused or contributed to the denial.

88.     On or about April 21, 2026, Plaintiff applied for a $2,000 Upstart loan with DR Bank.

89.     DR Bank approved the loan only at an annual percentage rate of 35.95% and charged an origination fee of $616.60. DR Bank stated that its decision was based on information from Equifax and Trans Union.

90.     Kia Finance's continued furnishing or verification of the Inaccurate Tradeline caused or contributed to Plaintiff receiving materially unfavorable terms from DR Bank.

### Damages and Willfulness

91.     At all relevant times, Kia Finance acted through its agents, servants, employees, representatives, and vendors acting within the course and scope of their authority.

92.     As a direct and proximate result of Kia Finance's post-notice conduct, Plaintiff suffered loss of credit, loss of the ability to obtain and benefit from favorable credit, adverse credit

terms, damage to her credit standing and reputation, and the expenditure of time, money, labor, and effort attempting to correct the reporting.

93.     Plaintiff also suffered frustration, anxiety, worry, humiliation, embarrassment, and emotional distress from repeatedly confronting a severe derogatory tradeline that contradicted Kia Finance's own written assurances and from being denied credit or offered credit only on predatory terms during a period of medical and financial strain following her accident.

94.     Kia Finance's violations were willful because it generated and possessed the very records establishing the contradictions, received repeated notices from three nationwide consumer reporting agencies, had repeated opportunities to correct the reporting, and nevertheless verified, maintained, or continued furnishing the charge-off and past-due status.

95.     Kia Finance's repeated failure to reconcile the Paid-in-Full Letter, the March 1, 2028 due-date emails, the insurance payoff, and Plaintiff's payment-plan performance reflects a knowing or reckless disregard of its duties under 15 U.S.C. § 1681s-2(b).

96.     Alternatively, Kia Finance acted negligently by failing to use reasonable procedures and care when investigating and responding to the consumer reporting agencies' notices of dispute.

## COUNT I
### VIOLATION OF 15 U.S.C. § 1681s-2(b)
**Failure to Conduct Reasonable Investigations and Correct Inaccurate Reporting**

97.     Plaintiff incorporates Paragraphs 1 through 96 as though fully set forth herein.

98.     Kia Finance regularly and in the ordinary course of business furnished information concerning Plaintiff's account to Experian, Equifax, and Trans Union.

99.     Plaintiff disputed the completeness and accuracy of the Inaccurate Tradeline with Experian, Equifax, and Trans Union.

100.     Experian, Equifax, and Trans Union each notified Kia Finance of one or more of Plaintiff's disputes pursuant to 15 U.S.C. § 1681i(a)(2).

101.    After receiving those notices, Kia Finance was required under 15 U.S.C. § 1681s-2(b)(1) to: (a) conduct an investigation concerning the disputed information; (b) review all relevant information provided by the consumer reporting agencies; (c) report the results of its investigations to the consumer reporting agencies; (d) if the information was found incomplete or inaccurate, report those results to all other consumer reporting agencies to which it had furnished the information; and (e) promptly modify, delete, or permanently block information that was inaccurate, incomplete, or could not be verified.

102.    Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct reasonable investigations of the disputed information.

103.    Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to meaningfully review all relevant information provided by the consumer reporting agencies, including the substance of Plaintiff's disputes and the supporting information concerning Kia Finance's Paid-in-Full Letter and March 1, 2028 due-date emails.

104.    Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report complete and accurate investigation results to the consumer reporting agencies.

105.    Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(D) by failing to report to every consumer reporting agency to which it furnished the Inaccurate Tradeline that the disputed information was inaccurate or incomplete.

106.    Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block information that was inaccurate, incomplete, materially misleading, or unverifiable.

107.    Kia Finance's violations caused the Inaccurate Tradeline to remain in Plaintiff's credit files and to be published to potential creditors after Kia Finance received statutory notices of dispute.

108.    As a direct and proximate result, Plaintiff suffered the damages described above.

109.    Kia Finance's violations were willful, entitling Plaintiff to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1681n.

110.    Alternatively, Kia Finance's violations were negligent, entitling Plaintiff to actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award:

A.  Actual damages in an amount to be determined at trial;

B.  Statutory damages under 15 U.S.C. § 1681n;

C.  Punitive damages under 15 U.S.C. § 1681n;

D.  Reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o;

E.  Prejudgment and post-judgment interest as permitted by law; and

F.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 24, 2026

/s/ David Pinkhasov
David Pinkhasov, FL Bar No. 1040933
**CONSUMER ATTORNEYS, PLLC**
68-29 Main Street
Flushing, New York 11367
Telephone: (718) 701-4605
Email: dpinkhasov@consumerattorneys.com

*Counsel for Plaintiff*
*Nadezhda Rozhkova*